**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Deborah Gosnell | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | CIVIL ACTION NO.: 10-2684 |
| | : | |
| Consumer Solutions, LLC | : | JURY OF TWELVE (12) JURORS DEMANDED |
| | : | |
| Elvin J. James | : | |
| | : | |
| John Doe Title Company, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I.   JURISDICTION AND VENUE

1.      Jurisdiction in this Honorable Court is based on federal question conferred by 28 U.S.C §1332(a) in that the parties are citizens of different states and the amount in controversy is in excess of $75,000. Also jurisdiction is conferred by the Truth in Lending Act (hereinafter "TILA"), 15 U.S.C. §1640(e). Supplemental jurisdiction over state law claims is granted by 28 USC §1367.

2.      Venue lies in this District in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principle place of business, and/or does business here, and/or the subject of this action is situated within this district.

## II.   PARTIES

3.      Plaintiff, Deborah Gosnell, is an adult individual currently residing at 109 Overbrook Parkway, Wynnewood, PA 19096.

4.      Defendant Elvin J. James ("James") is an individual residing at 101 Ashley Ave., Goldsboro, North Carolina 27534.

5.      Defendant Consumer Solutions, LLC, is a distressed debt buyer with offices at 350 Highland Drive, Lewisville, TX 75067. Defendant alleges it purchased the loan obligation after origination hereinafter described from its originator, Dana Capital.  Dana Capital is defunct, but Consumer Solutions, LLC is an assignee of Dana Capital. By operation of common law, Consumer Solutions, LLC took plaintiff's loan subject to all claims plaintiff would have had against its originator and assignor, Dana Capital, and therefore Dana Capital and Consumer Solutions, LLC are referred to hereinafter collectively as "Consumer Solutions".

6.      Defendant, John Doe 1 is a title insurance underwriter that uses a network of agents like the now defunct title agent for this transaction disputed herein, Alliance Title Company (Non-Party), to sell and issue title insurance policies including for real estate sale transactions. John Doe 1 and Alliance Title will also hereinafter sometimes be collectively referred to as "Title Agency".

7.      At all times herein, Alliance Title was acting within the course and scope of its apparent duties and functions as a title agent.

8.      Defendants, John Does 2-10, is a moniker for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom.   Each of these parties are incorporated as Defendants in each and every Count and averment listed above and below.

III.    FACTS

**Background to the Scam**

9.      At all times material hereto, Plaintiff was the deed owner of her home at, Pennsylvania.

2

10.     On or about February, 2006, plaintiff fell into default on her existing mortgages.

11.     On or about May, 2006, plaintiff filed a chapter 13 bankruptcy petition to avoid sheriff sale of her home.

12.     On or about September 2006, plaintiff consulted the internet for foreclosure rescue assistance and contacted A-One Investment Management Inc. d/b/a Funding Foreclosures ("A-One").

13.     A-One promised plaintiff that:

a)  They could stop foreclosure on plaintiff's home by selling her home to an investor and then leasing the property back to plaintiff;

b)  They would secure a mortgage loan for plaintiff to repurchase her home from the investor after the lease period of 12 months expired.

14.     Plaintiff signed various documents provided by A-One including but not limited to:

a)  An Equity Purchase Agreement which referenced leaseback of the property to plaintiff and promised to pay Funding Foreclosures $378,000 upon repurchase of the home, and;

b)  A Property Holding Trust Agreement which named a third party trustee, Nations Property Management, to hold the property during the lease term.

See Ex. "A" attached hereto.

**The Loan Transaction**

15.     On or about August 22, 2008, plaintiff entered into a loan/ "purchase" transaction with defendant James and Consumer Solutions [hereinafter "the Loan Transaction"] wherein the following pertinent details of which included:

3

a) roughly $350,000 in mortgage debt of plaintiff's paid off from a $500,000 purchase price funded by a $450,000 loan from Dana Capital;

b) "seller carryback" of $25,000, i.e. a seller held second mortgage lien, and;

c) $26,000 cash down payment believed to have been a paper fiction;

d) $100,000 was to be payable to plaintiff as cash proceeds from the loan.

16.     Upon information and belief, Consumer Solutions issued closing instructions to Alliance Title to disburse $100,000 cash proceeds of the loan to plaintiff.

17.     Upon information and belief, Alliance Title prepared a HUD1 for the loan transaction based upon the aforesaid disbursement instructions of Consumer Solution's assignor Dana Capital.

18.     Title Agency issued title insurance as part of the closing of the loan transaction.

19.     Upon information and belief, the $100,000 proceeds of the Dana Capital loan was wrongfully disbursed by Title Agent to the principals of A-One and Nations Property, Charles Head and John Corcoran, who converted said funds to their own use.  Head and Corcoran were indicted in 2008 by the U.S. government for mortgage fraud and otherwise operating a criminal enterprise which stripped over $12,000,000 in equity from homeowners across the country (hereafter described as "the Head scam").

20.     After two (2) months of lease payments, defendant Elvin James wrote a letter to plaintiff stating he could no longer make payments on the property and that it would go into foreclosure as a result.

21.     When plaintiff attempted to contact A-One for an explanation of events, she was told that federal authorities had taken all of their files because of an alleged mortgage fraud scheme.

4

22.     Consumer Solutions commenced a foreclosure against James in 2009 under Montgomery County docket number 2009-36556 (hereinafter "the foreclosure action").

23.     Plaintiff through counsel was granted leave to intervene in the foreclosure action in April, 2010.

24.     Due to the original mortgage to Dana Capital and the deed from plaintiff James being lost and unrecorded, defendant Consumer Solutions, by separate action in Montgomery County Common Pleas Court, sought and was granted declaratory relief in the nature of said deed and mortgage being deemed genuine and authentic.

**Notice of an Irregular Mortgage Transaction**

25.     Based on facts alleged herein, the intent of the parties in engaging in the sale/leaseback transaction underlying the loan was for plaintiff to give the Head Defendants a mortgage on the property in exchange for services promised by them to rescue plaintiff's home from foreclosure and assist her with gaining a mortgage loan to repurchase the property from James upon rebuilding of plaintiff's credit.

26.     The aforesaid intent of the parties created an equitable mortgage in favor of James in a foreclosure rescue transaction rather than a traditional sale of the property.

27.     The following facts from the transactions created notice to the loan's originator, Dana Capital, of the aforesaid equitable mortgage:

      (a)  Plaintiff's existing mortgage loan was delinquent and in foreclosure status;

      (b)  Plaintiff would continue to occupy the property under a lease/purchase agreement between Plaintiff and James to take effect immediately proceeding the sale;

5

(c) Under the lease/purchase agreement, Plaintiff would continue to make most repairs to the property as an owner would;

(d) There was no prior listing of the property or involvement of a real estate agent in the sale;

(e) There was a credit counseling charge to Plaintiff listed on the HUD1;

(f) The Property Holding Trust Agreement stated that plaintiff's home was to be deeded in trust to Nations Property Management.

28.     Based on the above facts, Consumer Solutions was on notice that James was a straw purchaser to facilitate a scam foreclosure rescue transaction.

29.     Consumer Solutions was on notice the Loan Transaction was irregular in that:

(a) The deed and mortgage were not recorded;

(b) The deed was a quitclaim deed rather than a grant or warranty deed common to a real estate transactions where title insurance is involved and title is cleared rather than the buyer taking a quitclaim with the potential for title issues

(c) James and Plaintiff had a lease/purchase agreement under which Plaintiff continued to occupy the property;

(d)  There was no real estate broker commission indicating the prior listing of the property or involvement of a real estate agent in the sale.

30.     As a result of the foregoing, Plaintiff has suffered injuries including, but not limited to:  (1) pain and suffering, including emotional distress and embarrassment; (2) damage to credit rating and/or credit defamation; (3) financial loss(es), including lost opportunity(ies) and/or equity; (4) loss and/or possible loss of the premises; (5) attorneys fees and court costs; and/or (6) such other and further injuries as will be determined in discovery and/or at trial, including aggravation of a pre-existing condition(s).

31.     At all times herein, plaintiff exercised due diligence in ensuring that her interests were being protected and promises made to her were adhered to and that discovery of the defendants' conduct was actively concealed by deceptions of the defendants described above.

## IV.     Causes of Action

### <u>COUNT I</u> – Truth-in-Lending Act ("TILA")/Home Ownership and Equity Protection Act ("HOEPA")
*Plaintiff v. Consumer Solutions*

32.     Plaintiff incorporates by reference all prior paragraphs as if set forth at length herein.

33.     At all times material, Consumer Solutions, in the ordinary course of business, extended and/or arranged for the extension of consumer credit and/or offered to extend or arrange for the extension of such credit.

34.     The Loan was an extension of a consumer line of credit secured by a mortgage on the residence and therefore subject to Plaintiff's right of rescission, and/or statutory and/or actual damages described by 15 U.S.C. §1635 and 12 C.F.R. §226.23.

35.     In said loan transaction, Plaintiff did not receive the disclosures required by the Truth-In-Lending A ct ("TILA"), 15 U.S.C . §1601, et. seq., and Regulation Z of the Federal Reserve Board ("Regulation Z"), 12 C. F.R §226.1 et seq.

36.     By failing to deliver all "material" disclosures required by TILA and Regulation Z, including but not limited to:

a)   Failing to properly and accurately disclose the " amount  financed," described in and in violation of Regulation Z §226.18(b) and 15 U.S.C. §1638(a)(2)(A);

b) Failing to clearly and accurately disclose the " finance charge" described in and in violation of Regulation Z §226.4 and 15 U.S.C. §1638(a)(3);

c) Failing to clearly and accurately disclose the " annual percentage rate," described in and in violation of Regular Z § 226.18(e) and 15 U.S.C. §1638(a)(4);

d) Failing to comply with the special disclosure requirements of Regulation Z §226.32;

e) Failing to timely provide each Plaintiff with two (2) copies of a Notice of his/her Rights to Rescind the Transaction and/or one (1) copy each of the form Disclosure pursuant to TILA and/or HOEPA.

37.    Due to the violations of TILA and Regulation Z, Plaintiff has an ongoing right to rescind the transaction, and/or right to recoupment, statutory and actual damages.

38.    To the extent that Dana Capital transferred its interest in the loan to defendant Consumer Solutions, 15 U.S.C. § 1641(c) renders Consumer Solutions liable for rescission and damages.

**COUNT II**
**Unfair Trade Practices and Consumer Protection Law ("UTPCPL")**
*Plaintiffs v. Title Agency and James*

39.    Plaintiff incorporates all facts and allegations set forth elsewhere in this Complaint.

40.    Defendants' fraud and fraudulent misrepresentations included, but were not limited to Title agency intentionally diverted loan funds to the foreclosure rescue scammers that were payable to Plaintiff.

8

41.     John Doe 1, as principal of its agent, Alliance Title, put its agent in a position which enabled the agent, while apparently acting within its authority, to commit a fraud upon a third person, plaintiff, and is subject to liability to such third persons for fraud.

42.     Using the fraudulent and/or material misrepresentation by omission, Title Agent, acting under the color of established institutional integrity, induced plaintiff to entrust disbursement of her loan proceeds to it based upon the HUD1 disbursement statement it prepared.

43.     Title Agent acted at all times relevant knowingly, with fraudulent intent or with reckless disregard of the truth in contradiction to the closing instructions of the loan to share and/or obtain the fruits of the fraud.

44.     Title Agent's misrepresentations, by act and omission, substantially contributed to Ms. Gosnell's decision to enter into the mortgage transactions.

45.     Plaintiff justifiably relied upon the misrepresentations in that Title Agent's intentions to act contrary to the closing instructions and HUD1 settlement statement were concealed from her.

46.     Plaintiff suffered damages as a result of the fraud in the loss of equity from her home and other damages.

47.     Said Defendant's fraud in connection with the loan transaction entitles the Plaintiff to damages for theft of her loan funds and loss of home equity.

48.     John Doe Title Company, by and through its agency relationship with Alliance Title, is jointly and severally liable for the actions of its agent, Alliance, when Title Agent conducts loan closing transactions involving the issuance of title insurance.

9

49.     John Doe Title Company had a duty to manage, audit, and otherwise supervise its agents like Alliance Title to prevent fraudulent actions described herein as having been undertaken by Alliance in this disputed transaction.

50.     John Doe Title Company having failed to fulfill its aforesaid duty is jointly and severally liable for the fraudulent actions of Alliance Title.

51.     James misrepresented themselves to plaintiff as investors whose intent was to assist plaintiff with rescue of her home when, in fact, James were part of a criminal conspiracy that was the Head scam.

52.     James' representations and/omissions outlined in previous paragraph were false, were known or should have been known to defendants to be false when made, were material in nature, and were made with the intent to deceive and defraud the plaintiff into selling his home so that defendants could strip tens of thousands from the home's equity.

53.     James knew that the plaintiff had no special knowledge in the nuances of credit repair programs and foreclosure rescue transactions and would rely on their representations as to the intent and details of the Loan Transaction and its aftermath.

54.     Plaintiff relied on James' misrepresentations in entering the Loan Transaction.

55.     As a result of plaintiff's reliance on James' misrepresentations, the plaintiff suffered the damages outlined above including but not limited to loss of over $100,000 in home equity and extreme mental anguish, frustration, humiliation, embarrassment and stress.

56.     As a result of plaintiff's reliance on Title Agent's and James' misrepresentations, the plaintiff suffered the damages outlined above and extreme mental anguish, frustration, humiliation, embarrassment and stress.

57.    The defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

58.    The conduct by defendants described above constitutes trade and commerce under the UTPCPL.

59.    The UTPCPL proscribes, *inter alia*, engaging in any "unfair or deceptive acts and practices" either at, prior to, or subsequent to a consumer transaction.

60.    The fraudulent actions of Defendants described above constitute unfair or deceptive acts and practices under UTPCPL, additionally including, but not limited to the following, *inter alia*:

> (a) Title Agency and James engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding as to the foreclosure action credit repair, Loan, and foreclosure rescue, 73 P.S. §201-2(xxi);

> (b) Title Agency and James misrepresented the characteristics or benefits of the loan in terms of cash disbursement, credit repair, and foreclosure rescue, 73 P.S. § 201-2 (4)(v);

> (c) James caused a likelihood of confusion or a misunderstanding as to the service, sponsorship, approval or certification of services of the Head rescue scammers, 73 P.S. § 201-2 (4) (v); and

> (d) Defendants misrepresented the loan's sponsorship and/or approval, 73 P.S. § 201-2 (4) (ii).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests this Honorable Court enter judgment in their favor and against Defendants, individually, jointly and/or severally, in an amount in excess of seventy-

five thousand dollars ($75,000), plus such other and further relief as this Honorable Court deems necessary and just, and to Order the following relief:

    A.  Declaration by the Court that deed in favor of James is void and title is revested in plaintiff;

    B.  Declaration that an equitable Mortgage exists between plaintiff and whoever is proved to be owner of the Note and Mortgage securing an amount of principal to be determined by litigation.

    C.  Rescission of the loan transaction, including termination of any security interest in Plaintiff's property created under the transaction and a declaration that Plaintiff is not liable for any finance charges or other charges imposed by Defendants;

    D.  Statutory damages of $2,000 for each loan for failure to rescind pursuant to the requirements of 15 U.S.C. §1635(b);

    E.  Actual damages in an amount not less than the amount of equity in the home lost by plaintiff at the time of the disputed transaction but to be determined at trial;

    F.  Treble actual damages;

    G.  Punitive damages;

    H.  Reasonable Attorneys fees, expenses, and costs of suit.

## **JURY PRAYER**

Plaintiff demands trial by jury.

Dated: February 7, 2011                    /s/ Matthew Weisberg, Esquire

WEISBERG LAW, P.C.
Pa. Id. No. 85570
(610) 690-0801

/s/ RC935
ROBERT P. COCCO, P.C.
By:  Robert P. Cocco, Esquire
(215) 351-0200
Attorneys for Plaintiff